# U.S. COURT OF APPEALS FOR THE ELEVENTH CIRCUIT

## CERTIFICATE OF INTERESTED PERSONS
## AND CORPORATE DISCLOSURE STATEMENT

United States of America _____ vs. Tony Henderson _____ Appeal No. 12-14628-CC

11th Cir. R. 26.1 (enclosed) requires that a Certificate of Interested Persons and Corporate Disclosure Statement must be filed by the appellant with this court within 14 days after the date the appeal is docketed in this court, and must be included within the principal brief filed by any party, and included within any petition, answer, motion or response filed by any party. **You may use this form to fulfill this requirement.** In alphabetical order, with one name per line, please list the trial judge(s), and all attorneys, persons, associations of persons, firms, partnerships, or corporations that have an interest in the outcome of this case or appeal, including subsidiaries, conglomerates, affiliates and parent corporations, including any publicly held corporation that owns 10% or more of the party's stock, and other identifiable legal entities related to a party.

***(please type or print legibly):***

James Casey - Special Agent in Charge Federal Bureau of Investigations

James Henderson - Son of Defendant / Appellant

Linda Henderson - Spouse of Defendant / Appellant

Milton Jones III - Stepson of Defendant / Appellant

Monte C. Richardson - Magistrate, U.S. District Court for the Middle District of Florida

Rebecca Henderson - Daughter of Defendant / Appellant

Robert Rosier - Purchaser of Firearms from Defendant / Appellant

Russell Stoddard - Assistant U.S. Attorney, U.S. District Court for the Middle District of Florida

Timothy J. Corrigan - Trial Judge, United States District Court for the Middle District of Florida

Tony Henderson - Defendant / Appellant

I

Eleventh Circuit Docket No.: 12-14628-CC

## **STATEMENT REGARDING ORAL ARGUMENT**

Defendant – Appellant does not seek to present oral arguments on his appeal.

## TABLE OF CONTENTS

|  | Page |
|---|---|
| CERTIFICATE OF INTERESTED PERSONS | I |
| STATEMENT REGARDING ORAL ARGUMENT | II |
| TABLE OF CONTENTS | III |
| BRIEF | 1 |
| EXHIBITS / ATTACHMENTS 1- 6 | 17 |
| CERTIFICATE OF SERVICE | 48 |

UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT
56 Forsyth Street, N.W.
Atlanta, GA 30303

**United States of America**

v.  Appeal No. 12-14628-CC

**Tony Henderson**

---

### Appeal of Denial of Motion to Return Property under Rule 41(g)

**Introduction:**

Defendant, Tony Henderson, pro se, appeals the Denial of the Motion for Return of Property dated August 8, 2012, by U. S. District Court, Middle District of Florida, Jacksonville Division, Florida. The District Court erred in relying on U.S. v Howell, 425 F.3d 971(11th Cir. 2005) which is factually distinguishable from this case. The facts of this case are not in dispute.

**Facts:**

**A. My Collection**

For approximately twenty (20) years, I have been collecting firearms and memorabilia for a hobby. My father and I enjoyed hunting together, and I also gave my son and stepson two rifles in order to get them interested in the sport. When my father passed away, I inherited several rifles and guns from him which were to be passed on to my son, stepson and daughter from their grandfather. As a law enforcement officer with the U.S. Border Patrol, I also collected several firearms as a hobby and enthusiast. The firearms collection, (hereinafter "Collection") belonging to

my family and I. It consisted six (6) hunting rifles, three (3) hunting shotguns, five (5) handguns including a commemorative collectible Border Patrol handgun, two (2) collectible rifles including a M1A1 Garand from Vietnam, and a Enfield from WWII, two (2) inoperable display only weapons including a Black Powder muzzle loader wall hanger replica and a Japanese Arisika rifle, one (1) bow & arrow Crossbow, and ammunition valued at approximately $8,000.00. The total Collection consisted of eighteen (18) firearms including two inoperable rifles, one (1) bow & arrow Crossbow and five (5) assorted rifle ammo magazines.

The Collection pieces were all 20 to 100 years old. In addition to the pieces that were part of an inheritance, the other pieces were purchased during my marriage with marital assets with my wife, Linda.

### B. Surrender for Safekeeping

On June 7, 2006 I was arrested as a result of a complaint issued in the Middle District of Florida, Jacksonville Division. After being charged with a criminal offense, the Judge had stated that as a condition of my bond, he was requesting that I voluntarily turn over all firearms at my home to the FBI, due to my mental distress and because I was a law enforcement officer. On June 9, 2006, I voluntarily turned over the entire contents of my firearms for safe keeping.[1] When I turned over my Collection, the FBI provided me a property receipt and inventory which indicated the listed property was "received from" Tony Henderson.[2] (Exhibit 1). The firearms in the Collection have never

---

[1] The FBI attempted to take possession of the entire contents of my safe which also included non-firearms items such as my collection of baseball trading cards and coins. My attorney objected to this expanded taking.
[2] Note the property receipt is incorrectly numbered, as the number 10 listed twice. There were actually 20 items of property turned over.

been alleged to be involved in any criminal activity or to have been purchased from proceeds of criminal activity[3].

### C. Judicial Proceedings

On November 30, 2007, I pled guilty to a drug offense. The plea agreement made no mention of the Collection and did not include a forfeiture count. On April 21, 2008, I was sentenced to six months imprisonment and probation. I was granted early termination of probation as of June 11, 2010. The conditions of the bond were fully satisfied when I presented myself to serve my sentence in July 2008.

### D. Attempt to dispose of property

On December 1, 2008, upon my return from incarceration, I transferred ownership of the Collection to William Boggs. (Exhibit 2). The FBI contacted Mr. Boggs and intimidated and discouraged him to the extent that he withdrew his request for possession of the Collection and cancelled the agreement to purchase the firearms and crossbow for his own collection.

On February 4, 2009, Robert Rosier expressed interest in owning the entire Collection. A Bill of Sale was signed and submitted to the FBI by Mr. Rosier. The FBI advised him they would contact him about taking possession. On December 14, 2009, I contacted the FBI regarding making arrangements for Mr. Rosier to take possession and complete the sale agreement. I was told by Agent Eubanks that the FBI was aware of the request and they were trying to work with the U.S. Attorney's Office regarding the situation and they would be in touch with us.

---

[3] The Cross Bow and two non-functional rifles are not considered firearms or contraband.

By letter dated December 16, 2009, 10 months after Mr. Rosier filed a claim, the FBI sent me a "Waiver of Ownership of Firearm, Asset ID: A-06-FBI-00141." The Form reads: "On June 9, 2006, the Federal Bureau of Investigation seized miscellaneous firearms from Tony Henderson. I understand that the C.F.R. requires that the FBI inform me that I have the opportunity to claim this firearm (41 C.F.R. 128-48.102.1). I understand that if I do not claim this firearm with 30 days of signing this document, the title to the firearm will vest in the U.S. Government." Additionally, the form included a hold harmless clause. This notice was received three years six months and seven days after the property was "received from" me. It was the first notification I had that the FBI considered the property "seized."

Neither Mr. Rosier, Mr. Boggs, my wife, Linda Henderson, my children, nor I received notice of seizure and an opportunity to file a claim for their interest in the Collection. I signed receipt of the document on December 28, 2009, and the same day Mr. Robert Rosier and I filed a letter claiming interest in the Collection. The written claim included a statement of facts and circumstances justifying granting the claim. The claim was also supported by documentary evidence establishing valid, good faith, innocent owner interest in the property. (Exhibit 3) On January 5, 2010, I received a letter from the FBI Counsel stating they were conducting an investigation into the merits of the claim.

On May 21, 2010, I received a letter from the FBI Property Management Officer stating that the claim filed on January 4, 2010 was reviewed and denied. It stated that since I did not have the authority to legally possess firearms, I cannot delegate the

authority to any other person. On June 3, 2010, I requested reconsideration of that decision, which was denied on January 26, 2011.

### E. Lack of Notice

Although the Collection was never included as part of any criminal case, I was never given a notice of seizure citing any statute under which the Collection, in whole or in part, was to be seized and potentially forfeited. Mr. Boggs, Mr. Rosier, my wife Linda Henderson, my son, stepson and daughter also received no notice or any opportunity to file a claim for the Collection. In my son's and stepson's case, they were not provided an opportunity to claim their own two rifles.

On June 13, 2010, I filed a Motion to Return or Dispose of Property with the Middle District of Florida, Jacksonville, Florida Division. (Exhibit 4) At that time, I requested return of the Collection and that the property rights of my wife, Linda Henderson, be recognized. I asked that possession and control of the Collection be awarded to her, or in the alternative that Robert Rosier, a non-relative third-party.

On May 27, 2011, the U.S. Magistrate denied the Motion. (Exhibit 5) I timely appealed that Denial. On August 8, 2012, the U.S. District Court Judge adopted the Report and Recommendation as the Opinion of the Court and denied my request to return the property. (Exhibit 6).

## Law

Congress has established a strict procedure, placing limits on federal courts by enacting general rules for civil forfeiture proceedings, including proceedings to forfeit firearms. 18 U.S.C. § 983. Congress requires that "any action or proceeding for the forfeiture of firearms or ammunition shall be commenced within 120 days of such

seizure." 18 U.S.C. § 924(d)(1); U.S. v. 52 Firearms, 362 F. Supp. 2d 1308 (M.D. Fla., Feb. 10, 2005). The plain and unambiguous meaning of the statutory term "any action or proceeding" includes not only administrative, but also judicial proceedings. Id.

The 11th Circuit held that "forfeitures are not favored, and those seeking forfeiture in this circuit must strictly comply with the letter of the law." See U.S. v. One 1936 Model Ford V-8 DeLuxe Coach, 307 U.S. 219, 226 (1939); U.S. v. $38,000.00 in U.S. Currency, 816 F.2d 1538, 1547 (11th Cir. 1987). When the government misses the deadline to provide notice of seizure and forfeiture to an owner or a party who may have an interest, the government has disabled itself from obtaining an order of forfeiture. U.S. v. Leroy F. Miller, 588 F.3d 418 (7th Cir., Nov. 19, 2009).

Title 18 U.S.C. § 922(g)(1) makes it unlawful for any person with a felony conviction to possess any firearm or ammunition. The term "possess" has been broadly interpreted to include constructive possession. The law is silent as to any other interest that a convicted felon may retain in spite of not being allowed to possess such property. However, owners of firearms that have been seized by the government in connection with a search or criminal activity are entitled to due process and notice before their property rights are extinguished.

Some Courts have held that under such circumstances, the U.S. must sell the weapons for the felon's account, if, by missing the statutory deadline, it disables itself from obtaining an order of forfeiture. Cooper v. Greenwood, 904 F.2d 302, 304 (5th Cir. 1990).

Although public policy favors law enforcement's requests to confiscate firearms from criminals, it does not relieve them from complying with the statutory requirements

set forth by Congress. Courts of equity can no more disregard statutory provisions than can courts of law. United States v. Luis Armando Rodriguez, 2011 U.S. Dist. LEXIS 133109, *16 (W.D.Tex. February 2011); see Holland v. Florida, 130 S. Ct. 2549, 2563 (2010) ("Courts of equity can and do draw upon decisions made in other similar cases for guidance"). "Exercise of a court's equity powers . . . must be made on a case-by-case basis." Id.

**Analysis:**

The government persuaded me to temporarily give up possession of my Collection, failed to lawfully seize the Collection or give notice of seizure to me or any other interested claimant, and now proposes to take title of the $8,000 collection, permanently. Equity forbids this result.

The December 2009 FBI letter stated, for the first time, that the firearms were "seized" on June 9, 2006; however, no basis for seizure was provided and none existed. The FBI letter specifically cited an abandonment provision, at 41 C.F.R. 128-48.102-1, stating that if the owner of firearms is known, he "shall be notified within 20 days of finding such property" and he would then have thirty (30) days from the date of the notification letter to claim the property.[4] Under the most generous reading of this statute, and if the Court holds that forfeiture could not be commenced until the release of the bond, July 8, 2008, notice was not provided until December 2009, 17 months later. Thus, both the forfeiture and the abandonment statutory notice requirements were not met.

---

[4] By including a hold harmless provision in the notice of seizure provided by the FBI on December 16, 2009, it endeavored to protect its agents from legal action under 42 U.S.C. § 1983. It was at a minimum, deceitful, and calculated to protect its own shortcomings. However, a legal action under the Tucker Act may be more appropriate, but is still additional litigation over an issue that can be resolved within equitable legal precedent.

There is no question that the FBI failed to give proper notice of either abandonment and/or seizure to all parties that it knew had an actual interest or an apparent interest in the property. Whether or not any party could have prevailed is not relevant to the analysis of whether or not the government had a statutory duty to provide notice. The result of failure to give notice and an opportunity for due process is that the government is now unable to obtain an order from the Court for forfeiture.

Based on the government's failure to provide timely notice and due process, my interest in the property continues even though my possessory interest has been curtailed. U.S. v. Leroy F. Miller, 588 F.3d 418, 420 (7th Cir., Nov. 2009). Due to the government's own inaction, it is now disabled from obtaining an order of forfeiture. Id. at 419, Cooper v. Greenwood, 904 F.2d at 304. That is exactly the posture that this Court finds itself today with this case.

What that failure of notice has done is also to divest my wife of her marital asset. My wife has no bar to owning and possessing any firearm in her own right. Just because she owns a firearm cannot just be assumed to be constructive possession for me without offering her a procedure to state her claim. There are numerous alternatives for her to store and maintain her own firearms which do not afford me influence and control. Such a holding would unconstitutionally interfere with her own right to own and bear arms as provided by the Second Amendment without due process. By failing to give proper notice and an opportunity to claim their own property, my son, stepson and daughter are having their rights trampled. My children are adults and have the right to have access to the Collection their grandfather intended them to have. The government seeks to deny them access and rights to their property without benefit of due process

based on a criminal conviction of which they had no part and have not been alleged to have had any part. As explained, all of the Collection was either purchased with marital assets, independently owned by my son and stepson, or were inherited from my father to inure to my children's benefit in the future. There has been no explanation or consideration of their legitimate interests.

This case is not about 18 U.S.C. § 922(g). I am not asking for the return of the Collection to my possession or constructive possession. However, there is no language in 18 U.S.C. § 922(g) that automatically divests a convicted felon of all of his property interest and the attending financial value. While the language does curtail actual possession and interstate commerce, it does not, in any way, limit my residual property interest that could be transferred by process of intestate inheritance, marital dissolution property settlement of marital assets, or sale by trust for the benefit of the owner, as a few examples of potential ownership rights. There is certainly no language that divests my wife, son and stepson from their own interests. The Crossbow (bow and arrow) is not even a firearm and the inoperable Black Powder replica wall hanger and nonfunctional Japanese Arisika are not even covered by 18 U.S.C. § 922(g), but no distinction has been made as to what may be prohibited.

Under the circumstances as described here, the other impairment is that the government had no basis for seizure or forfeiture and has yet to provide any such legal basis. The government could have avoided this situation from the first day by putting me on notice that I was at liberty to sell or otherwise dispose of the firearms at any time prior to the final resolution of the case. The Court could have put me on notice of the consequences of a plea while my Collection remained with the FBI for my own

protection. I could have sold or transferred the Collection prior to any plea in order to pay for my defense, or to support of my family during the pendency of the proceedings. I could have returned my son's and stepson's rifles to them for their own safekeeping and allowed my wife to secure her property in any way she deemed appropriate without providing me access.

The deprivation of my property came as a surprise to me. Placing the Collection for safekeeping with the FBI rather than a neutral party authorized to sell the property, had the effect of depriving me of the ability to dispose of the property prior to my conviction and yet being unable to recover the value or have the title and control assigned to my wife and/or a neutral. From the moment I delivered the Collection at the government's request, the property was encumbered with the bond and deprived me of my ability to sell or dispose of the property so that I could not benefit from the value of my legally owned collection of firearms. Under other circumstances, my wife and I could have sold them as a collection or one-by-one to legitimate buyers at a fair price. We could have determined if there were other viable alternatives that better suited the intent of my father when he passed his collection to me.

But this Court is not without options to resolve this stalemate. Because in this case the government's failure to give notice of seizure precludes forfeiture of my residual property interest and because the government does not have any way to dispose of the property by sale or destruction, this Court must look to an equitable solution.

The 5th Circuit held that firearms are not contraband *per se*. Cooper v. Greenwood, 904 F.2d 302, 304 (5th Cir. 1990). It specifically held that that although a

convicted felon cannot legally possess a gun, he continues to have a property interest, limited to an ownership interest. Id. at 306. Every claimant has a right to his day in court and, regardless of his chances of success. He has a right to apply for remission or mitigation. Id. With proper notice, other persons who had an interest could have had the opportunity to also assert their claims. Id. The 5th Circuit concluded that because the government did not institute a forfeiture action, the United States must sell the weapons for the felon's account because, by missing the statutory deadline, it disabled itself from obtaining an order of forfeiture. Id.

The 7th Circuit held that if the United States does not want to sell firearms for the felon's benefit, that it must offer him some other lawful option: having a trustee sell or hold the guns, or giving them to someone who can be relied upon to treat them as his own. United States v. Miller, 588 F.3d 418, 420 (7th Cir., Nov. 2009). In this case there is no evidence that my wife, adult children, or Mr. Rosier have abandoned their right to own and treat the Collection as their own, if so entrusted.

Persuasively, the Second Circuit, just a few months ago, had occasion to weigh in on this issue and adopted the position taken in U.S. v. Miller, 588 F.3d 418. That Circuit concluded that under limited circumstances a convicted felon may arrange to benefit from the sale of otherwise lawful, unforfeited firearms by a third party without actually or constructively possessing them. U.S. v. Zaleski, 212 U.S. App. LEXIS 14435, *7-*8 (2nd Cir. July 2012). The possibility that a felon will receive a financial benefit from a trustee's sale of firearms to compensate him for his non-possessory property interest in them does not, standing alone, mean that he constructively possesses them. Id. The Zaleski court also found that it is not a windfall to allow a felon

to retain the value of property that he lawfully possessed before he was convicted and that is not subject to forfeiture, nor did it appear that the arrangement would impose a substantial burden on the government because the transferee would liquidate the weapons. Id. at FN3.

Similarly is the case, U.S. v. Brown, In re: Claim of Bernhard Bastian Jr., 2010 U.S. Dist. LEXIS 35358 (D.N.H. 2010) where as a condition of bail, Brown voluntarily surrendered his firearms and it was agreed the firearms would be held by a neutral third party pending the resolution of the charges and that he would pay all storage charges. While the government argued that a convicted felon cannot lawfully divest himself of mere legal title to firearms that he can no longer lawfully possess, without thereby "constructively possessing those firearms," the court held that such a conclusion stretched the concept of "constructive possession," as the term is used in the criminal statute prohibiting possession by felons. (18 U.S.C. 922(g). Id. at *7. The court noted that no precedent was cited by the government that held that mere continuing ownership of firearms following a felony conviction, without more, amounts to constructive possession. "It seems inconsistent to contend on the one hand that continued ownership of firearms does not amount to constructive possession, but, on the other hand, terminating one's ownership interest does." Id. *8-9. "Firearms subject to neither lawful forfeiture nor confiscation as contraband remain valuable tangible personal property belonging to the convicted felon." Id. at *10. The Brown court rejected the premise that "firearms lawfully owned must, following the owner's unrelated felony conviction, sit wherever they may be, unalienable and wasting, not subject to forfeiture, not subject to confiscation as contraband, and not subject to disposition by

the owner, or by anyone else, or by the court for the owner's benefit." The court further rejected that the property could be destroyed in the absence of due process or payment of just compensation." Id. at * 14.

Finally, in U.S. v. Parsons, the District Court for the Northern District of Iowa, distinguished that case from U.S. v. Felici, 208 F.3d 667 (8th Cir. 2000), in that in Parsons, the convicted felon asked to have his personal collection of firearms transferred to his friend who would sell some and keep some, and would alone determine what to do with the proceeds. 474 F. Supp. 2d, 1169, 1175. In Felici, the defendant sought to have the firearms in trust for him by a third party. Id. The court noted that the two cases each had a defendant who was not a convicted felon at the time he acquired the firearms. The government had no basis to seize the firearms as part of any criminal matter. But the court found that a defendant like Parsons would have been free to lawfully dispose of his firearms in the manner he sees fit prior to pleading guilty but for the intervention of the government's seizure and continued possession of the firearms. Id. at 1177. That is exactly the facts in my case. The government has no basis for seizure and has never alleged that to the contrary. Rather they were acting as a bailee for the convenience of the court while the case was pending. Nothing happened that converted that mere bailee relationship into a forfeiture of my ownership interest. The Parsons court noted that "as a general principle, equity abhors waste, and delights to restrain it in a proper case." Id. at 1175, citing Finney County Water Users' Ass'n v. Graham Ditch Co., 1 F.2d 650, 652 (D. Colo. 1924). Therefore, the court allowing Parsons to designate a friend to receive the property to treat as his own did not give him constructive possession.

The Court below incorrectly relied on the decision in U.S. v. Howell, 425 F.3d 971, 972-73 (11th Cir. 205). That decision held that the United States is not obliged to confer a benefit on a felon by selling guns as his agent, and that transferring the guns to a straw owner would permit the felon to maintain unlawful constructive possession of the weapons. However, the facts in my case are distinguishable in that my Collection was never seized. In Howell, the firearms were part of a search and were ultimately seized during the arrest. It appears that Howell had a receipt indicating that that property was "seized." He, and any other potential claimants, were on notice. In my case, the Judge in the bond hearing indicated the weapons were being held as a means to ensure my own safety and not for any other purpose than custodial safeguarding. That was the reason that my wife's and my son's, stepson's and daughter's property were also turned over at that time. The property receipt specifically did not check the box for seizure or abandonment. It listed the firearms as "received" giving no indication of urgency in divesting myself of ownership. In my case, there is no straw owner Therefore, the holding in Cooper and Zaleski , rather than Howell, applies.

The examples in Cooper, Zaleski , Miller and Parsons give this Court guidance as to how to fashion an equitable remedy without running afoul of 18 U.S.C. § 922(g). These decisions are all post-Howell and show the trend of the District and Circuit courts throughout the country. As an appropriate remedy, the Court has broad authority to define an equitable solution so the government does not profit from its own violation of statutory notice requirements and I do not control the property, in violation of law. Equity can accomplish both goals.

The court may separate out the items that are not subject to the bar under 922(g), and return them to me. The court can order the transfer of title to the remaining Collection and order a sale for my account. U.S v. Miller, 588 F.3d at 419. That would preclude me, as a convicted felon, from unilaterally dictating or directing disposition, as some courts have found objectionable, and it avoids the constitutional issues arising under the *Takings Clause,* while it fully protects my legitimate property interests. I am not setting the value, directing the sale or purchase of the firearms, but am merely compensated for the value of my property by a neutral third-party, subject to any commission for such sale. The court can set such conditions as it deems necessary. See U.S. v. Rodriguez, 2011 U.S. Dist. LEXIS 133109, at *54. Finally, the court can allow me to designate a third-party who can lawfully take possession of the Collection and treat it as his own.

The Supreme Court expects the Circuits to be able to define equity on a case-by-case basis and fashion remedies that are appropriate. Holland v. Florida, 130 S. Ct. 2549, 2563 (2010). This Court can recognize that early notice would have remedied this situation and that I am without fault in that regard. The government should not profit from its refusal to notify or consider claimants, by gleefully taking title to an $8,000 collection. I immediately took all steps to attempt to resolve the issue while the FBI failed to do the bare minimum, and even led me to believe that they could/would turn the Collection over to Mr. Boggs or Mr. Rosier. Until December 16, 2010, after my extensive efforts to resolve the issues with my property, I had no idea that safeguarding my property would result in the loss of any financial benefit associated with my lawful ownership.

Finally, failing to grant equitable relief, results in imposition of a fine or penalty not imposed by the sentencing judge at the time of the conviction. It was not contemplated by the sentencing judge and the loss of value of my Collection without compensation results in a windfall to the government and no legal basis to do so. Equity requires this Court to do better.

## Conclusion:

I hereby respectfully request that this Court recognize my wife and my adult children's independent ownership interest in the Collection turned over to the FBI as a condition of my bond. I also request that the Court separate and return the property to me that is not covered by 18 U.S.C. § 922(g), i.e., the Crossbow and inoperable replica wall-hanging Black Powder and nonfunctional Japanese Arisika. Alternatively, I request that the Court recognize my continued ownership interest in the property value and order its sale for my benefit or my wife's or adult children's benefit or allow me to designate a neutral third party to take possession as his own..

Dated: June 24, 2013.

Respectfully submitted,

Tony Henderson, Pro Se
6195 Oakdale lane
MacClenny, FL 32063
Phone: 904-259-1436
        904-233-3613

# U.S. COURT OF APPEALS FOR THE ELEVENTH CIRCUIT

# CERTIFICATE OF SERVICE

<u>United States of America</u> vs. <u>Tony Henderson a.k.a. Hollywood</u> Appeal No. <u>12-14628-CC</u>

FRAP 25(b) through (d) (see reverse) requires that at or before the time of filing a paper, a party must serve a copy on the other parties to appeal or review. In addition, the person who made service must certify that the other parties have been served, indicating the date and manner of service, the names of the persons served, and their addresses. **You may use this form to fulfill this requirement. Please type or print legibly.**

I hereby certify that on (date) <u>June 25, 2013,</u>

A true and correct copy of the foregoing (title of filing) <u>Appeal of Denial of Motion to Return Property under Rule 41(g),</u>

has been deposited in Certified U.S. Mail and properly addressed to the persons who names and addresses are listed below:

<u>U.S. District Judge Honorable Timothy J. Corrigan U.S. District Court Middle District of Florida</u>

<u>300 N. Hogan Street Jacksonville, Fl. 32202</u>

<u>Assistant U.S. Attorney Russell Stoddard U.S. District Court Middle District of Florida 300 N.</u>

<u>Hogan Street Jacksonville, FL 32202</u>

<u>U.S. District Court Clerk of the Court Middle District of Florida 300 N. Hogan Street Jacksonville,</u>

<u>FL 32202</u>

<u>U.S. Office of the Clerk Attn: Joe Caruso United States Court of Appeals for the Eleventh Circuit</u>

<u>56 Forsyth St., NW Atlanta, GA 30303</u>

_Tony Henderson_
Your Name (please print)

_[signature]_
Your Signature

48