No. 12-14628-CC

In the
United States Court of Appeals
for the Eleventh Circuit

UNITED STATES OF AMERICA,
*Plaintiff-Appellee,*

v.

TONY HENDERSON,
*Defendant-Appellant*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
NO. 3:06-CR-211-J-32TEM

## BRIEF OF THE UNITED STATES

A. LEE BENTLEY, III
Acting United States Attorney

PEGGY MORRIS RONCA
Assistant United States Attorney
Appellate Division

PATRICIA D. BARKSDALE
Assistant United States Attorney
Appellate Division
Florida Bar No. 096326
300 N. Hogan Street, Suite 700
Jacksonville, Florida 32202
(904) 301-6300

September 18, 2013

*United States v. Henderson*
No. 12-14628-CC

**Certificate of Interested Persons
and Corporate Disclosure Statement**

In addition to the persons identified in the certificate of interested

persons and corporate disclosure statement in Tony Henderson's principal

brief, the following persons have an interest in the outcome of this case:

1.   Barksdale, Patricia, Assistant United States Attorney;

2.   Bentley, A. Lee, III, Acting United States Attorney;

3.   Brown, D. Rodney, Assistant United States Attorney;

4.   Glober, Bonnie A., Assistant United States Attorney;

5.   Morris, Honorable Thomas E., United States Magistrate Judge;

6.   O'Malley, Kathleen A., former Assistant United States Attorney;

7.   O'Neill, Robert E, former United States Attorney;

8.   Rhodes, David P., Assistant United States Attorney, Chief,
     Appellate Division; and

9.   Ronca, Peggy Morris, Assistant United States Attorney.

## Statement Regarding Oral Argument

The United States does not request oral argument because the sole issue presented involves the application of controlling precedent to straightforward facts.

# Table of Contents

Certificate of Interested Persons and Corporate Disclosure Statement. . . . . C-1

Statement Regarding Oral Argument. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

Table of Contents. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

Table of Citations. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iv

Statement of Jurisdiction. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . vi

Statement of the Issue. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Statement of the Case. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

    *Course of Proceedings*. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

    *Statement of the Facts*. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

    *Standard of Review*. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Summary of the Argument. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Argument and Citations of Authority. . . . . . . . . . . . . . . . . . . . . . . . . . . 9

    The district court did not abuse its discretion in denying
    Henderson's Fed. R. Crim. P. 41(g) motion in equity to transfer
    firearms that he could no longer possess as a convicted felon. . . . . . . . 9

Conclusion. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Certificate of Service

# Table of Citations

## Cases

*Atkins v. Parker*,
    472 U.S. 115, 105 S. Ct. 2520 (1985). . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Cooper v. City of Greenwood, Miss.*,
    904 F.2d 302 (5th Cir. 1990). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 16

*Smith v. GTE Corp.*,
    236 F.3d 1292 (11th Cir. 2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Turner v. Burnside*,
    541 F.3d 1077 (11th Cir. 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*United States v. Bradley*,
    644 F.3d 1213 (11th Cir. 2011). . . . . . . . . . . . . . . . . . . . . . . . . . . . . vi

*United States v. Brown*,
    754 F. Supp.2d 311 (D.N.H. 2010). . . . . . . . . . . . . . . . . . . . . . . . . 15, 16

*United States v. Felici*,
    208 F.3d 667 (8th Cir. 2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

\*United States v. Howell*,
    425 F.3d 971 (11th Cir. 2005). . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 5–17

*United States v. Machado*,
    465 F.3d 1301 (11th Cir. 2006),
    *abrogated on other grounds by*
    *Bowles v. Russell*, 551 U.S. 205, 127 S. Ct. 2360 (2007). . . . . . . . 8, 10, 14

*United States v. Martinez*,
    241 F.3d 1329 (11th Cir. 2001). . . . . . . . . . . . . . . . . . . . . . . . vi, 9, 10, 15

*United States v. Miller*,
588 F.3d 418 (7th Cir. 2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 16

*United States v. Parsons*,
472 F.Supp.2d 1169 (N.D. Iowa 2007). . . . . . . . . . . . . . . . . . . . . . . . 16

*United States v. Potes Ramirez*,
260 F.3d 1310 (11th Cir. 2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*United States v. Watkins*,
120 F.3d 254 (11th Cir. 1997). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . vi

*United States v. Zaleski*,
686 F.3d 90 (2d Cir.), *cert. denied*, 133 S. Ct. 554 (2012). . . . . . . . . 15, 16

## Statutes

18 U.S.C. § 922(g). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

21 U.S.C. § 841(a)(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

28 U.S.C. § 1291. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . vi

28 U.S.C. § 1346(a)(2). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . vi

42 U.S.C. § 1983. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

## Rules

Fed. R. App. P. 4(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . vi

Fed. R. Crim. P. 41(g). . . . . . . . . . . . . . . . . . iii, vi, 1, 7–10, 12–14, 16, 17

## Other Authorities

41 C.F.R. § 128-48.102-1. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

41 C.F.R. § 128-48.503(b). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

# Statement of Jurisdiction

This is an appeal from a final order in a previously completed criminal case denying Tony Henderson's Fed. R. Crim. P. 41(g) motion to transfer firearms that he had surrendered during his pre-trial release. That court had jurisdiction. *See United States v. Martinez*, 241 F.3d 1329, 1330–31 (11th Cir. 2001) (district court may exercise jurisdiction over a Rule 41(g) motion filed in a criminal case even after criminal proceedings have ended).[1] The court entered the order on August 9, 2012, Doc. 171, and Henderson timely filed a notice of appeal on September 5, 2012, Doc. 172, *see* Fed. R. App. P. 4(a). This Court has jurisdiction over this appeal. *See* 28 U.S.C. § 1291.

---

[1]A Rule 41(g) motion initiates a civil action in equity. *United States v. Martinez*, 241 F.3d 1329, 1330–31 (11th Cir. 2001). "[E]quity intervenes only when there is no remedy at law or the remedy is inadequate." *United States v. Bradley*, 644 F.3d 1213, 1310 (11th Cir. 2011). Accordingly, in *United States v. Watkins*, 120 F.3d 254, 256 (11th Cir. 1997), this Court affirmed a district court's dismissal of a motion under Rule 41(g) (formerly Rule 41(e)) because the movant could seek monetary damages under 28 U.S.C. § 1346(a)(2) if the United States wrongfully converted his property. As will be more clear after reading other sections of this brief, to the extent that Henderson sought the value of the firearms, the district court would not have had jurisdiction under Rule 41(g) if he had an adequate remedy at law to recover that value.

## Statement of the Issue

Whether the district court abused its discretion in denying

Henderson's Fed. R. Crim. P. 41(g) motion in equity to transfer

his firearms that he could no longer possess as a convicted felon.

## Statement of the Case

During his pre-trial release pending trial on charges that he distributed

marijuana and committed related crimes, Henderson surrendered his personal

firearms to the FBI.  He sought their return only after he became a felon.  By

then, however, he could neither actually nor constructively possess them.

Based on *United States v. Howell*, 425 F.3d 971 (11th Cir. 2005), the district

court denied his post-conviction motion for equitable relief in the form of an

order effectuating a transfer of the firearms to someone else.  He challenges

that denial.

### *Course of Proceedings*

While employed as a United States Border Patrol Agent, Henderson

sold marijuana to a confidential source.  Presentence Investigation Report

("PSR") ¶¶ 11–14.  A grand jury charged him with seven crimes, including

distributing marijuana, in violation of 21 U.S.C. § 841(a)(1).  Doc. 15 at 1–4.

The grand jury sought forfeiture of his house but not his firearms.  Doc. 15 at

1

5–6.

As part of Henderson's pre-trial-release conditions, a magistrate judge ordered him to surrender his "law enforcement firearms and credentials." Doc. 8 at 2; Doc. 182 at 11–12. In addition to those firearms, on June 9, 2006, Henderson surrendered his personal firearms to the FBI. Doc. 182 at 6, 11, 22 & Def. Ex. 2.

Henderson pleaded guilty to the distribution crime based on a plea agreement. Doc. 128. The United States agreed that it would dismiss the other six charges and would not pursue the forfeiture of his house. Doc. 128 at 3. On December 6, 2007, the district court accepted his plea, and, on April 21, 2008, the court sentenced him to serve six months' incarceration and 24 months' supervised release. Docs. 129, 144, 146. Henderson sought the return of his personal firearms only after sustaining that felony conviction. Doc. 168 at Def. Exs. 1–14.

While Henderson was serving his sentence, his lawyer asked the prosecutor what arrangements Henderson could make to allow his mother to pick-up his personal firearms, but his lawyer did not receive a response and did not pursue the matter further. Doc. 168 at Def. Ex. 1.

After Henderson finished serving his sentence, he asked the FBI to give

his personal firearms to his neighbor, William Boggs. Doc. 182 at 9–10, 15 & Def. Ex. 3. Henderson told the FBI that he had transferred the firearms to Boggs, and Henderson presented a bill of sale reflecting the transfer but no sale price. Doc. 168 at Def. Ex. 3. After talking to the FBI and deciding that he did not want to become involved, however, Boggs changed his mind and voided the bill of sale. Doc. 182 at 16–18, 26 & Def. Ex. 3.

Henderson next asked the FBI to give the firearms to a friend, Robert Rosier. Doc. 182 at 16, 19, 24–25 & Def. Exs. 4. Henderson told the FBI that Rosier now wanted the firearms, and Henderson presented another bill of sale reflecting the transfer but, again, no sale price. Doc. 168 at Def. Ex. 4. In the bill of sale, Henderson acknowledged that he could not own or possess a firearm as a convicted felon but represented that he "is legally entitled to sell and/or transfer title of his firearms." Doc. 182 at Ex. 4. Henderson followed his request with letters and telephone calls. Doc. 168 at Def. Exs. 5, 6.

After investigating the merits of Henderson's request, the FBI sent him a letter stating that it had seized the firearms on June 9, 2006 (the day that Henderson had surrendered them), and explaining that, if he wanted them back, he had to follow the procedures in 41 C.F.R. § 128-48.102-1 for claiming abandoned or unclaimed property. Doc. 168 at Def. Exs. 7, 8. The FBI

3

stressed: "**Be advised that federal law prohibits anyone convicted of a felony from possessing a firearm.**" Doc. 168 at Def. Ex. 8 (emphasis in original). The FBI placed values on the firearms, from $10 to $1613.40, with all but one on the lower end of that range. Doc. 168 at Def. Ex. 8.

Henderson responded with a letter asserting that he had voluntarily surrendered his firearms to the FBI and therefore took issue with the FBI's use of the term "seized" and suggestion that he had abandoned them. Doc. 168 at Def. Ex. 9. He nevertheless filed a claim for the firearms as directed. Doc. 168 at Def. Ex. 9. He also re-submitted the bill of sale of the firearms from him to Rosier and offered the FBI a "settlement agreement" under which he would hold the FBI harmless for any unlawful seizure. Doc. 168 at Def. Ex. 9. And he explained that he had owned the firearms for years, that friends and family had given him many of them, that none of them had ever been reported stolen or missing (assertedly), and that none of them had been used to commit a crime. Doc. 168 at Def. Ex. 9. Rosier likewise submitted a claim, explaining that he was Henderson's friend, that he could lawfully possess firearms, and that he had agreed to buy the firearms to help Henderson pay off debt. Doc. 168 at Def. Ex. 10.

The FBI ultimately denied Henderson's and Rosier's claims. Doc. 168

4

at Def. Exs. 11, 12.  The FBI explained that, because Henderson was prohibited from possessing firearms as a convicted felon, he could not establish a valid and good faith interest in them as section 128-48.503(b) requires.  Doc. 168 at Def. Ex. 11.  Relying on *Howell*, 425 F.3d 971 and *United States v. Felici*, 208 F.3d 667, 670 (8th Cir. 2000), the FBI continued, "the release of the firearms to [Henderson] or [his] designee, Robert Rosier, … would place [Henderson] in violation of federal law as it would amount to constructive possession."  Doc. 168 at Def. Ex. 11.  "Moreover," the FBI added, "as [Henderson does] not have the authority to legally possess firearms, [he] cannot delegate the authority to any other person."  Doc. 168 at Def. Ex. 11.

Henderson asked the FBI to reconsider.  Doc. 168 at Def. Ex. 13.  In addition to his previous assertions, he asserted for the first time that his wife and children had a financial interest in the firearms and asked the FBI to give the firearms to them so that they could sell them to any person legally able to possess them.  Doc. 168 at Def. Ex. 13.  In a final decision, the FBI denied his reconsideration request, explaining that he had not presented anything that the FBI had not already considered.  Doc. 168 at Def. Ex. 14.

While the administrative process was pending, Henderson filed in the district court a motion asking the court to give "possession and control" of the

firearms to his wife "for the benefit of our adult children and heirs," or to

Rosier, with directions that Rosier pay Henderson "for the firearms … as the

lawful non-possessory owner." Doc. 155 at 2. (Although not expressly cited,

the motion was, in effect, a motion under Fed. R. Crim. P. 41(g) because no

other provision could have given the court jurisdiction to act in the then-closed

criminal case. See the above *Statement of Jurisdiction*.) Relying on *Howell*, 425

F.3d 971, the United States opposed Henderson's motion. Doc. 159. The

court deferred ruling pending completion of the administrative process. Docs.

160, 161.

Following completion of the administrative process, Henderson renewed

his motion, and the magistrate judge conducted an evidentiary hearing on it.

Docs. 162, 163, 165, 168, 182. Henderson's undisputed testimony and

exhibits established the above procedural history. Doc. 182 & Doc. 168 at

Def. Exs. 1–19. He added that, in addition to surrendering his personal

firearms for "safekeeping" purposes, he had surrendered them because the

magistrate judge who had released him on bond pending completion of his

criminal case had believed that he had mental-health issues and presented a

risk to both himself and his family. Doc. 182 at 11–12.

In his renewed motion and at the hearing, Henderson argued that the

district court should grant his motion because: (1) the firearms do not relate to his crime; (2) the FBI did not have probable cause to seize them and did not follow its own procedures for seizing property; (3) he had surrendered them only for safekeeping and to satisfy a bond condition; (4) when the FBI took them, it did not tell him that his relinquishment of them would equate to his abandonment of them; (5) he still holds legal title to them; and (6) he had neither abandoned them nor forfeited his interest in them. Doc. 165 at 3; Doc. 182 at 21–24, 31–33.

The magistrate judge issued a report and recommendation that the district court deny the motion based on *Howell*, 425 F.3d 971. Doc. 169 at 5. Applying *Howell*, the judge concluded that Henderson may not obtain equitable relief afforded by Rule 41(g) because, as a convicted felon, he had unclean hands, and, further, the court could not itself transfer the firearms from him to anyone else because doing so would, in effect, recognize and condone his unlawful constructive possession of them. Doc. 169 at 5–7. Henderson timely objected. Doc. 169.

The district court conducted a de novo review, overruled Henderson's objections, adopted the report and recommendation, and denied the motion. Doc. 171. This appeal followed. Doc. 172.

### *Statement of the Facts*

All pertinent facts are in the above *Course of Proceedings*.

### *Standard of Review*

When reviewing a district court's denial of a Rule 41(g) motion for return of property, this Court will review any legal issue de novo, any factual finding for clear error, and any equitable balancing for abuse of discretion. *United States v. Machado*, 465 F.3d 1301, 1307 (11th Cir. 2006), *abrogated on other grounds by Bowles v. Russell*, 551 U.S. 205, 127 S. Ct. 2360 (2007); *United States v. Howell*, 425 F.3d 971, 973 (11th Cir. 2005).

### Summary of the Argument

As the magistrate judge and the district court recognized, *United States v. Howell*, 425 F.3d 971 (11th Cir. 2005), compelled denial of Henderson's Fed. R. Crim. P. 41(g) motion to transfer the firearms to his wife or Rosier. A Rule 41(g) proceeding is a civil proceeding in equity that may be filed in a opened or closed criminal case. In *Howell*, this Court held that a convicted felon is not entitled to Rule 41(g) equitable relief in the form of a court order transferring his firearms because, as a convicted felon in the criminal case, he has unclean hands, and, furthermore, doing so would improperly recognize and condone his unlawful constructive possession of them. *Howell* cannot be meaningfully

distinguished.  In light of that controlling authority, the court did not abuse its discretion.

## Argument and Citations of Authority

### The district court did not abuse its discretion in denying Henderson's Fed. R. Crim. P. 41(g) motion in equity to transfer firearms that he could no longer possess as a convicted felon.

While adding some facts never found by the district court, Henderson argues that this Court should grant the Fed. R. Crim. P. 41(g) relief that the district court denied because the balance of equities assertedly favors him. Henderson's brief at 1–16.  But this Court will only review the decision of the district court; it will not weigh those purported equities in the first instance. Based on *United States v. Howell*, 425 F.3d 971 (11th Cir. 2005), the court did not abuse its discretion in denying Henderson's Rule 41(g) motion.

Under Rule 41(g) (previously Rule 41(e)), a "person aggrieved by an unlawful search and seizure of property or by the deprivation of property may move for the property's return."  Although a Rule 41(g) motion initiates a civil proceeding in equity, a district court may exercise jurisdiction over a Rule 41(g) motion filed in a criminal case even after the criminal case has ended. *United States v. Martinez*, 241 F.3d 1329, 1330–31 (11th Cir. 2001).  The

decision to exercise jurisdiction, however, "is highly discretionary and must be exercised with caution and restraint." *Id.* at 1331 n.2. "Jurisdiction is appropriate only when the petitioner's conduct and the merits of his petition require judicial review to prevent manifest injustice." *Id.*

To obtain Rule 41(g) relief, a defendant must show that he has a possessory interest in the property. *Howell*, 425 F.3d at 974. The United States may rebut a defendant's possessory-interest showing with evidence that it has a legitimate reason to keep the property. *United States v. Potes Ramirez*, 260 F.3d 1310, 1314 (11th Cir. 2001).

In addition to showing that he has a possessory interest in the property, a defendant also must show that equitable considerations favor him. *Howell*, 425 F.3d at 974. A defendant may not obtain Rule 41(g) relief if he has unclean hands because equitable relief may not be given to anyone with unclean hands. *United States v. Machado*, 465 F.3d 1301, 1307 (11th Cir. 2006), *abrogated on other grounds by Bowles v. Russell*, 551 U.S. 205, 127 S. Ct. 2360 (2007).

Applying that law, in *Howell*, this Court upheld a district court's denial of Rule 41(g) relief to a drug defendant who sought the return of firearms seized from his home (which was not where he had sold the drugs). 425 F.3d

at 974. This Court held that the United States had a legitimate interest in keeping the firearms because the defendant, although their record owner, became a convicted felon following their seizure, and returning them to him therefore would violate 18 U.S.C. § 922(g), the law prohibiting convicted felons from possessing firearms. *Id.* "[I]f an individual is a convicted felon," this Court held, "that individual will not be entitled to the return of seized firearms, **either directly or indirectly**. Requiring a court to return firearms to a convicted felon would not only be in violation of a federal law, but would be contrary to the public policy behind the law." *Id.* at 976 (emphasis added).

Under the same rationale, this Court rejected the defendant's argument that the district court could place the firearms in a relative's possession or sell the firearms and give him the proceeds, holding that such relief "is beyond the scope of Rule 41(g)" because "any firearm possession, actual or constructive, by a convicted felon is prohibited by law." *Id.* at 976–77.

This Court found it "irrelevant" that the defendant had lawfully possessed the firearms when law enforcement agents had seized them. *Id.* at 977. This Court observed that section 922(g) "was specifically designed to serve public policy and prevent convicted felons from having either constructive or actual possession of firearms. This statute was designed to

work retroactively, and once an individual becomes a felon, he will be in violation of [section] 922 if found to be in possession of a firearm." *Id.* "Obviously," this Court emphasized, "courts cannot participate in a criminal offense by returning firearms to a convicted felon." *Id.*

This Court further held that the defendant was not entitled to Rule 41(g) relief because, as a drug dealer, the defendant had unclean hands, and therefore could not be the beneficiary of equitable relief (the only type of relief available under Rule 41(g)). *Id.* at 974. According to this Court, "[t]he defendant in the instant case has come into court with extremely 'unclean hands.' One engaged in [drug dealing] is hardly entitled to equitable relief." *Id.*

As the magistrate judge and district court recognized, Docs. 169, 171, *Howell* controls this case. Under *Howell*, the court could not transfer Henderson's firearms from him to his wife or Rosier because doing so would, in effect, recognize and condone his unlawful constructive possession of them. *See Howell*, 425 F.3d at 976–77. As a convicted felon, he was not "entitled to the return of seized firearms, either directly or indirectly." *See id.* at 976 (quoted). Additionally, under *Howell*, Henderson could not be the beneficiary of equitable relief afforded by Rule 41(g) because, as a convicted felon, he had

12

unclean hands. *See id.* at 974. Stated another way, as a person engaged in felonious drug dealing, Henderson cannot use Rule 41(g) in his own criminal case to his advantage. *See id.* Thus, under *Howell*, the court correctly denied Henderson's motion.

Henderson tries to distinguish *Howell* on the ground that there, unlike here, law enforcement officers seized the firearms during a search of the defendant's home. Henderson's Brief at 14. As the magistrate judge and the district court recognized, however, how the officers had come into possession of the defendant's firearms was not pertinent to this Court's analyses or holdings in *Howell*; instead, they hinged on the defendant's status as a convicted felon when he sought Rule 41(g) relief. Doc. 169 at 6; Doc. 171 at 1. This Court even said, "The fact that the defendant was in lawful possession and was not a convicted felon when he acquired the firearms is irrelevant." *See Howell*, 425 F.3d at 977. Thus, Henderson's only attempt to distinguish *Howell* fails.

Henderson argues that the equities favor him, pointing out that the FBI did not follow forfeiture or seizure requirements, the FBI did not tell him that he would lose the right to transfer his firearms if he did not do anything to effectuate transfer before becoming a felon, he acted diligently *after* his

conviction, and losing his firearms is like incurring extra punishment.[2]

Henderson's brief at 8–9.  As an appellate court, however, this Court will not

weigh those purported equities in the first instance.  Rather, when reviewing a

district court's denial of Rule 41(g) relief, this Court will review a legal

decision de novo but an equitable balancing only for abuse of discretion.

*Machado*, 465 F.3d at 1307.  Here, in light of *Howell*, the district court did not

abuse its discretion.

In any event, the equities do not favor Henderson.  He surrendered his

firearms only after he had committed a felony while serving as a federal law

enforcement officer and then *only* to serve his own interest (to remain at liberty

pending resolution of the properly returned criminal charges against him).

That the FBI did not tell him about the legal consequences of his failure to

claim his firearms before his conviction does not favor him because the FBI

---

[2]Henderson also includes purported facts (for example, that he and his father enjoyed hunting together and that his father had bequethed the firearms to him with the understanding that he then would bequeth them to his children), Henderson's brief at 1–2, 8–9, but none of those purported facts are part of the record.  *See generally* Docs. 155, 159, 162, 163, 165, 169, 182 & Def. Exs. 1–14.  Because this Court will not consider facts that are not in the record, *Turner v. Burnside*, 541 F.3d 1077, 1086 (11th Cir. 2008), this Court should not consider them.  But even if this Court considered them, it should do so in light of Henderson's repeated requests to effectuate a sale of the firearms to third parties rather than keeping them within his own family.  *See* Doc. 168 at Def. Exs. 3, 4, 9, 10.

had no legal obligation to do so, and he was presumed to know the law, especially as a former—albeit disgraced—federal law enforcement officer. *See Atkins v. Parker*, 472 U.S. 115, 130, 105 S. Ct. 2520, 2529 (1985) ("All citizens are presumptively charged with knowledge of the law.").  Furthermore, although Henderson now contends that he could not have done anything with the firearms before his conviction because of his bond conditions, Henderson's brief at 5, the record on appeal shows that the bond conditions applied only to his law-enforcement firearms and, to the extent they also applied to his personal firearms, they did not limit his ability to transfer them, Doc. 8 at 2, which he did not even attempt to do until after his conviction, Doc. 168 at Def. Exs. 1–14, when, under *Howell*, it was too late.  Based on those circumstances, no manifest injustice resulted from the court's failure to grant Henderson relief.  *See Martinez*, 241 F.3d at 1330–31 (exercise of jurisdiction under Rule 41(g) "is appropriate only when the petitioner's conduct and the merits of his petition require judicial review to prevent manifest injustice").

Henderson cites several extra-circuit cases to try to support his position. Henderson's brief at 5–15 (*citing United States v. Zaleski*, 686 F.3d 90 (2d Cir.), *cert. denied*, 133 S. Ct. 554 (2012); *United States v. Miller*, 588 F.3d 418 (7th Cir. 2009), *Cooper v. City of Greenwood, Miss.*, 904 F.2d 302 (5th Cir. 1990), *United*

15

States v. Brown, 754 F. Supp.2d 311 (D.N.H. 2010), and *United States v. Parsons*, 472 F.Supp.2d 1169 (N.D. Iowa 2007)).  None of those cases help him.

Under the prior panel precedent rule, this Court is bound by a prior panel's holding unless and until it is overruled or undermined to the point of abrogation by the Supreme Court or this Court sitting en banc.  *Smith v. GTE Corp.*, 236 F.3d 1292, 1300 n.8 (11th Cir. 2001).  Under that rule, this Court is bound by *Howell*.  Three of the cases that Henderson cites, *Zaleski*, 686 F.3d at 93; *Miller*, 588 F.3d at 419; *Parsons*, 472 F.Supp.2d at 1176, do not help him because they expressly reject *Howell*.  Another one, *Brown*, 754 F. Supp.2d at 317, does not expressly reject *Howell* but rejects its holding that a court cannot participate in the sale of a convicted felon's firearms.  The final case that Henderson cites, *Cooper*, 904 F.2d at 304, does not help him, either.  *Cooper* involved a 42 U.S.C. § 1983 action, and, in *Howell*, this Court declined to follow the reasoning of a case involving a section 1983 action, explaining that section 1983 actions and Rule 41(g) motions "are birds of a different feather." *See Howell*, 425 F.3d at 976.  Thus, none of the cases upon which Henderson relies help him.

Henderson asserts that his wife should be allowed to keep "her own firearms," Henderson's brief at 8–9, but whether his wife had an interest in

them was not before the district court. Henderson did not present any evidence that his wife had an interest in them, *see generally* Doc. 168 at Def. Exs. 1–14, the magistrate judge did not make any finding that his wife had an interest in them, *see generally* Doc. 169, and he alone filed the Rule 41(g) motion, Doc. 155. Because whether Henderson's wife had an interest in the firearms was not an issue before the district court, this Court should not decide that issue in the first instance with neither facts nor a decision to review.

Finally, Henderson asks this Court to separate from the firearms any items that are not firearms, specifically describing a "Crossbow and inoperable replica wall-hanging Black Powder and nonfunctional Japanese Arisika," and order the FBI to return those items to him. Henderson's brief at 16. Again, however, Henderson did not ask the district court for that relief (much less alert the court to the fact that some of the property might not be firearms), moving only for the transfer of his "firearms collection" and proceeding as if all of the property sought to be returned was firearms. Docs. 155, 162, 163, 165, 168, 182. Having not asked for that relief below, this Court should not grant that relief now. (The FBI, however, will proceed to consider that claim.)

In short, because the district court correctly applied *Howell* and therefore did not abuse its discretion, this Court should affirm.

# Conclusion

The United States asks this Court to affirm the order of the district court.

Respectfully submitted,

A. LEE BENTLEY, III
Acting United States Attorney

PEGGY MORRIS RONCA
Assistant United States Attorney
Appellate Division

By:    *s/ Patricia D. Barksdale*
PATRICIA D. BARKSDALE
Assistant United States Attorney
Appellate Division
Florida Bar No. 096326
300 N. Hogan Street, Suite 700
Jacksonville, Florida 32202
(904) 301-6300
patricia.barksdale@usdoj.gov

# Certificate of Service

I certify that a copy of this brief and the notice of electronic filing was

sent by United States mail on September 18, 2013, to:

TONY HENDERSON
6195 Oakdale Lane
MacClenny, FL  32063-9511

*Defendant-Appellant, pro se*

*s/ Patricia D. Barksdale*
PATRICIA D. BARKSDALE
Assistant United States Attorney
