(Slip Opinion) OCTOBER TERM, 2014 1

Syllabus

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is being done in connection with this case, at the time the opinion is issued. The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## HENDERSON *v.* UNITED STATES

CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE ELEVENTH CIRCUIT

No. 13–1487. Argued February 24, 2015—Decided May 18, 2015

After being charged with the felony offense of distributing marijuana, petitioner Tony Henderson was required as a condition of his bail to turn over firearms that he lawfully owned. Henderson ultimately pleaded guilty, and, as a felon, was prohibited under 18 U. S. C. §922(g) from possessing his (or any other) firearms. Henderson therefore asked the Federal Bureau of Investigation, which had custody of his firearms, to transfer them to his friend. But the agency refused to do so. Henderson then filed a motion in federal district court seeking to transfer his firearms, but the court denied the motion on the ground that Henderson's requested transfer would give him constructive possession of the firearms in violation of §922(g). The Eleventh Circuit affirmed.

*Held*: A court-ordered transfer of a felon's lawfully owned firearms from Government custody to a third party is not barred by §922(g) if the court is satisfied that the recipient will not give the felon control over the firearms, so that he could either use them or direct their use. Federal courts have equitable authority to order law enforcement to return property obtained during the course of a criminal proceeding to its rightful owner. Section 922(g), however, bars a court from ordering guns returned to a felon-owner like Henderson, because that would place the owner in violation of the law. And because §922(g) bans constructive as well as actual possession, it also prevents a court from ordering the transfer of a felon's guns to someone willing to give the felon access to them or to accede to the felon's instructions about their future use.

The Government goes further, arguing that §922(g) prevents *all* transfers to a third party, no matter how independent of the felon's influence, unless that recipient is a licensed firearms dealer or other

third party who will sell the guns on the open market. But that view conflates possession, which §922(g) prohibits, with an owner's right merely to alienate his property, which it does not. After all, the Government's reading of §922(g) would prohibit a felon from disposing of his firearms even when he would lack any control over and thus not possess them before, during, or after the disposition. That reading would also extend §922(g)'s scope far beyond its purpose; preventing a felon like Henderson from disposing of his firearms, even in ways that guarantee he never uses them again, does nothing to advance the statute's goal of keeping firearms away from felons. Finally, the Government's insistence that a felon cannot select a third-party recipient over whom he exercises no influence fits poorly with its concession that a felon may select a firearms dealer or third party to sell his guns. The Government's reading of §922(g) is thus overbroad.

Accordingly, a court may approve the transfer of a felon's guns consistently with §922(g) if, but only if, the recipient will not grant the felon control over those weapons. One way to ensure that result is to order that the guns be turned over to a firearms dealer, himself independent of the felon's control, for subsequent sale on the open market. But that is not the only option; a court, with proper assurances from the recipient, may also grant a felon's request to transfer his guns to a person who expects to maintain custody of them. Either way, once a court is satisfied that the transferee will not allow the felon to exert any influence over the firearms, the court has equitable power to accommodate the felon's transfer request. Pp. 3–8.

555 Fed. Appx. 851, vacated and remanded.

KAGAN, J., delivered the opinion for a unanimous Court.

NOTICE: This opinion is subject to formal revision before publication in the preliminary print of the United States Reports. Readers are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D. C. 20543, of any typographical or other formal errors, in order that corrections may be made before the preliminary print goes to press.

## SUPREME COURT OF THE UNITED STATES

No. 13–1487

TONY HENDERSON, PETITIONER *v.*
UNITED STATES

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE ELEVENTH CIRCUIT

[May 18, 2015]

JUSTICE KAGAN delivered the opinion of the Court.

Government agencies sometimes come into possession of firearms lawfully owned by individuals facing serious criminal charges. If convicted, such a person cannot recover his guns because a federal statute, 18 U. S. C. §922(g), prohibits any felon from possessing firearms. In this case, we consider what §922(g) allows a court to do when a felon instead seeks the transfer of his guns to either a firearms dealer (for future sale on the open market) or some other third party. We hold that §922(g) does not bar such a transfer unless it would allow the felon to later control the guns, so that he could either use them or direct their use.

I

The Federal Government charged petitioner Tony Henderson, then a U. S. Border Patrol agent, with the felony offense of distributing marijuana. See 21 U. S. C. §§841(a)(1), (b)(1)(D). A Magistrate Judge required that Henderson surrender all his firearms as a condition of his release on bail. Henderson complied, and the Federal Bureau of Investigation (FBI) took custody of the guns.

Soon afterward, Henderson pleaded guilty to the distribution charge; as a result of that conviction, §922(g) prevents him from legally repossessing his firearms.

Following his release from prison, Henderson asked the FBI to transfer the guns to Robert Rosier, a friend who had agreed to purchase them for an unspecified price. The FBI denied the request. In a letter to Henderson, it explained that "the release of the firearms to [Rosier] would place you in violation of [§922(g)], as it would amount to constructive possession" of the guns. App. 121.

Henderson then returned to the court that had handled his criminal case to seek release of his firearms. Invoking the court's equitable powers, Henderson asked for an order directing the FBI to transfer the guns either to his wife or to Rosier. The District Court denied the motion, concluding (as the FBI had) that Henderson could not "transfer the firearms or receive money from their sale" without "constructive[ly] possessi[ng]" them in violation of §922(g). No. 3:06–cr–211 (MD Fla., Aug. 8, 2012), App. to Pet. for Cert. 5a–6a, 12a. The Court of Appeals for the Eleventh Circuit affirmed on the same ground, reasoning that granting Henderson's motion would amount to giving a felon "constructive possession" of his firearms. 555 Fed. Appx. 851, 853 (2014) (*per curiam*).[1]

---

[1] The Court of Appeals added that Henderson's "equitable argument rings hollow" because a convicted felon has "unclean hands to demand return [or transfer] of his firearms." 555 Fed. Appx., at 854. That view is wrong, as all parties now agree. See Brief for Petitioner 35–39; Brief for United States 31, n. 8; Tr. of Oral Arg. 33, 42. The unclean hands doctrine proscribes equitable relief when, but only when, an individual's misconduct has "immediate and necessary relation to the equity that he seeks." *Keystone Driller Co.* v. *General Excavator Co.*, 290 U. S. 240, 245 (1933). The doctrine might apply, for example, if a felon requests the return or transfer of property used in furtherance of his offense. See, *e.g.*, *United States* v. *Kaczynski*, 551 F. 3d 1120, 1129–1130 (CA9 2009) (holding that the Unabomber had unclean hands to request the return of bomb-making materials). But Henderson's felony

We granted certiorari, 574 U. S. \_\_\_ (2014), to resolve a circuit split over whether, as the courts below held, §922(g) categorically prohibits a court from approving a convicted felon's request to transfer his firearms to another person.[2] We now vacate the decision below.

II

A federal court has equitable authority, even after a criminal proceeding has ended, to order a law enforcement agency to turn over property it has obtained during the case to the rightful owner or his designee. See, *e.g.*, *United States* v. *Martinez*, 241 F. 3d 1329, 1330–1331 (CA11 2001) (citing numerous appellate decisions to that effect); Tr. of Oral Arg. 41 (Solicitor General agreeing). Congress, however, may cabin that power in various ways. As relevant here, §922(g) makes it unlawful for any person convicted of a felony to "possess in or affecting commerce[ ] any firearm or ammunition." That provision prevents a court from instructing an agency to return guns in its custody to a felon-owner like Henderson, because that would place him in violation of the law. The question here is how §922(g) affects a court's authority to instead direct the transfer of such firearms to a third party.

Section 922(g) proscribes possession alone, but covers possession in every form. By its terms, §922(g) does not prohibit a felon from *owning* firearms. Rather, it interferes with a single incident of ownership—one of the proverbial sticks in the bundle of property rights—by pre-

───────────

conviction had nothing to do with his firearms, so the unclean hands rule has no role to play here.

[2] Compare 555 Fed. Appx. 851, 853–854 (CA11 2014) (*per curiam*) (case below) (holding that §922(g) bars any transfer); *United States* v. *Felici*, 208 F. 3d 667, 670 (CA8 2000) (same), with *United States* v. *Zaleski*, 686 F. 3d 90, 92–94 (CA2 2012) (holding that §922(g) permits some transfers); *United States* v. *Miller*, 588 F. 3d 418, 419–420 (CA7 2009) (same).

venting the felon from knowingly *possessing* his (or another person's) guns. But that stick is a thick one, encompassing what the criminal law recognizes as "actual" and "constructive" possession alike. 2A K. O'Malley, J. Grenig, & W. Lee, Federal Jury Practice and Instructions, Criminal §39.12, p. 55 (6th ed. 2009) (hereinafter O'Malley); see *National Safe Deposit Co.* v. *Stead*, 232 U. S. 58, 67 (1914) (noting that in "legal terminology" the word "possession" is "interchangeably used to describe" both the actual and the constructive kinds). Actual possession exists when a person has direct physical control over a thing. See Black's Law Dictionary 1047 (5th ed. 1979) (hereinafter Black's); 2A O'Malley §39.12, at 55. Constructive possession is established when a person, though lacking such physical custody, still has the power and intent to exercise control over the object. See Black's 1047; 2A O'Malley §39.12, at 55. Section 922(g) thus prevents a felon not only from holding his firearms himself but also from maintaining control over those guns in the hands of others.

That means, as all parties agree, that §922(g) prevents a court from ordering the sale or other transfer of a felon's guns to someone willing to give the felon access to them or to accede to the felon's instructions about their future use. See Brief for United States 23; Reply Brief 12. In such a case, the felon would have control over the guns, even while another person kept physical custody. The idea of constructive possession is designed to preclude just that result, "allow[ing] the law to reach beyond puppets to puppeteers." *United States* v. *Al-Rekabi*, 454 F. 3d 1113, 1118 (CA10 2006). A felon cannot evade the strictures of §922(g) by arranging a sham transfer that leaves him in effective control of his guns. And because that is so, a court may no more approve such a transfer than order the return of the firearms to the felon himself.

The Government argues that §922(g) prohibits still more—that it bars a felon, except in one circumstance,

from transferring his firearms to another person, no matter how independent of the felon's influence. According to the Government, a felon "exercises his right to control" his firearms, and thus violates §922(g)'s broad ban on possession, merely by "select[ing] the[ir] first recipient," because that choice "determine[s] who [will] (and who [will] not) next have access to the firearms." Brief for United States 24. And that remains so even if a felon never retakes physical custody of the guns and needs a court order to approve and effectuate the proposed transfer. The felon (so says the Government) still exerts enough sway over the guns' disposition to "have constructive possession" of them. *Id.*, at 25. The only time that is not true, the Government claims, is when a felon asks the court to transfer the guns to a licensed dealer or other party who will sell the guns for him on the open market. See *id.*, at 20–22; Tr. of Oral Arg. 18–21. Because the felon then does not control the firearms' final destination, the Government avers, he does not constructively possess them and a court may approve the transfer. See *ibid.*

But the Government's theory wrongly conflates the right to possess a gun with another incident of ownership, which §922(g) does not affect: the right merely to sell or otherwise dispose of that item. Cf. *Andrus* v. *Allard*, 444 U. S. 51, 65–66 (1979) (distinguishing between entitlements to possess and sell property). Consider the scenario that the Government claims would violate §922(g). The felon has nothing to do with his guns before, during, or after the transaction in question, except to nominate their recipient. Prior to the transfer, the guns sit in an evidence vault, under the sole custody of law enforcement officers. Assuming the court approves the proposed recipient, FBI agents handle the firearms' physical conveyance, without the felon's participation. Afterward, the purchaser or other custodian denies the felon any access to or influence over the guns; the recipient alone decides where to store

them, when to loan them out, how to use them, and so on. In short, the arrangement serves only to divest the felon of his firearms—and even that much depends on a court's approving the designee's fitness and ordering the transfer to go forward. Such a felon exercises not a possessory interest (whether directly or through another), but instead a naked right of alienation—the capacity to sell or transfer his guns, unaccompanied by any control over them.[3]

The Government's view of what counts as "possession" would also extend §922(g)'s scope far beyond its purpose. Congress enacted that ban to keep firearms away from felons like Henderson, for fear that they would use those guns irresponsibly. See *Small* v. *United States*, 544 U. S. 385, 393 (2005). Yet on the Government's construction, §922(g) would prevent Henderson from disposing of his firearms even in ways that guarantee he never uses them again, solely because he played a part in selecting their

---

[3] The Government calls our attention to several cases in which courts have found constructive possession of firearms based on evidence that a felon negotiated and arranged a sale of guns while using a third party to make the physical handoff to the buyer. See, *e.g.*, *United States* v. *Nungaray*, 697 F. 3d 1114, 1116–1119 (CA9 2012); *United States* v. *Virciglio*, 441 F. 2d 1295, 1297–1298 (CA5 1971). But the facts in the cited cases bear no similarity to those here. In each, the defendant-felon controlled the guns' movement both before and during the transaction at issue (and even was present at the delivery site). As the Government explains, the felon could "make a gun appear" at the time and place of his choosing and decide what would happen to it once it got there. Tr. of Oral Arg. 27. Indeed, he could have chosen to take the firearms for himself or direct them to someone under his influence. The felon's management of the sale thus exemplified, and served as evidence of, his broader command over the guns' location and use—the very hallmark of possession. But as just explained, that kind of control is absent when a felon can do no more than nominate an independent recipient for firearms in a federal agency's custody. The decisions the Government invokes thus have no bearing on this case; nor does our decision here, which addresses only §922(g)'s application to court-supervised transfers of guns, prevent the Government from bringing charges under §922(g) in cases resembling those cited.

transferee.  He could not, for example, place those guns in a secure trust for distribution to his children after his death.  He could not sell them to someone halfway around the world.  He could not even donate them to a law enforcement agency.  See Tr. of Oral Arg. 22.  Results of that kind would do nothing to advance §922(g)'s purpose.

　Finally, the Government's expansive idea of constructive possession fits poorly with its concession that a felon in Henderson's position may select a firearms dealer or other third party to sell his guns and give him the proceeds.  After all, the felon chooses the guns' "first recipient" in that case too, deciding who "next ha[s] access to the firearms."  Brief for United States 24; see *supra,* at 5.  If (as the Government argues) that is all it takes to exercise control over and thus constructively possess an item, then (contrary to the Government's view) the felon would violate §922(g) merely by selecting a dealer to sell his guns.  To be sure, that person will predictably convey the firearms to someone whom the felon does not know and cannot control: That is why the Government, as a practical matter, has no worries about the transfer.  See Tr. of Oral Arg. 19–21.  But that fact merely demonstrates how the Government's view of §922(g) errs in its focus in a case like this one.  What matters here is *not* whether a felon plays a role in deciding where his firearms should go next: That test would logically prohibit a transfer even when the chosen recipient will later sell the guns to someone else.  What matters instead is whether the felon will have the ability to use or direct the use of his firearms after the transfer.  That is what gives the felon constructive possession.

　Accordingly, a court facing a motion like Henderson's may approve the transfer of guns consistently with §922(g) if, but only if, that disposition prevents the felon from later exercising control over those weapons, so that he could either use them or tell someone else how to do so.

One way to ensure that result, as the Government notes, is to order that the guns be turned over to a firearms dealer, himself independent of the felon's control, for subsequent sale on the open market. See, *e.g.*, *United States* v. *Zaleski*, 686 F. 3d 90, 92–94 (CA2 2012). Indeed, we can see no reason, absent exceptional circumstances, to disapprove a felon's motion for such a sale, whether or not he has picked the vendor. That option, however, is not the only one available under §922(g). A court may also grant a felon's request to transfer his guns to a person who expects to maintain custody of them, so long as the recipient will not allow the felon to exert any influence over their use. In considering such a motion, the court may properly seek certain assurances: for example, it may ask the proposed transferee to promise to keep the guns away from the felon, and to acknowledge that allowing him to use them would aid and abet a §922(g) violation. See *id.*, at 94; *United States* v. *Miller*, 588 F. 3d 418, 420 (CA7 2009). Even such a pledge, of course, might fail to provide an adequate safeguard, and a court should then disapprove the transfer. See, *e.g.*, *State* v. *Fadness*, 363 Mont. 322, 341–342, 268 P. 3d 17, 30 (2012) (upholding a trial court's finding that the assurances given by a felon's parents were not credible). But when a court is satisfied that a felon will not retain control over his guns, §922(g) does not apply, and the court has equitable power to accommodate the felon's request.

Neither of the courts below assessed Henderson's motion for a transfer of his firearms in accord with these principles. We therefore vacate the judgment of the Court of Appeals and remand the case for further proceedings consistent with this opinion.

*It is so ordered.*